IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>  Plaintiff/Appellee, )<br>  )<br> v. )<br>  )<br> CHARLES A. KNAPP, )<br>  )<br>  Defendant/Appellant. )<br> _____) | Case No.  CV-08-010-S-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

This matter was originally tried in front of Magistrate Judge Mikel H. Williams in the United States District Court, District of Idaho.  On April 16, 2008, Knapp was convicted of unlawfully constructing, placing, and maintaining an improvement on national forest system land, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(a).  Knapp was sentenced to two years unsupervised probation on July 7, 2008.  Knapp now appeals his conviction.

## FACTUAL BACKGROUND

The factual record in this case reveals that in early November 2004, Russell Hicks, District Geologist and Minerals Administrator for the Idaho City Ranger District, Boise National Forest, learned that Knapp was digging at the bank of

**Memorandum Decision and Order - 1**

Mores Creek at a site located on Knapp's KGH Gold #1 mining claim (TR 9-12; Ex. 1). The site is located on National Forest System land near Idaho City. Hicks visited the site and examined the entire claim to determine if it was being properly used for mining (TR 16). Hicks determined that Knapp was digging at the high bank, which had the potential to cause significant surface resource disturbance (TR 13).

On November 15, 2004, Hicks called Knapp and told him about his concerns. Hicks told Knapp that he would need to submit a plan of operations for his mining site (TR 13, 19, 21-22). Knapp submitted a proposed plan on December 13, 2004 (Ex. 3A). Knapp also discussed his operations with Hicks (TR 24). Through these contacts, Hicks learned that Knapp's proposed mining activities would require approximately 20 days of actual operation per year (TR 28, Ex. 3A). Hicks also asked Knapp about a trailer he had proposed for use in his plan of operations (TR 30). According to Hicks, Knapp's mining claim did not meet the criteria for allowing a live-in trailer on the claim (TR 31). However, Knapp explained that the trailer was not for use as a residence but for equipment storage (TR 30, 31; Ex. 3A).

Ultimately, Hicks typed a proposed plan of operations for Knapp pursuant to their discussions and mailed it to Knapp for his review and signature (TR 28-29,

**Memorandum Decision and Order - 2**

Ex. 3B). Knapp signed the proposed plan of operations on February 23, 2005 (TR 29; Ex. 3B). One of the specifications of the plan was a small camp trailer for equipment storage on site (TR 30; Ex. 3B). Hicks accepted Knapp's proposed plan for processing (TR 29).

Processing, which apparently involves review and analysis by various Forest Service agencies to determine the impact the project will have on the surface resources of the land on which the operation is being conducted, took over two years to perform (TR 41-42). The purpose for the review and analysis was to determine any restrictions the Forest Service would need to impose on the operation to minimize environmental impacts and damage to surface resources (TR 32-33).

Knapp continued to work on his mining claim while the plan was being processed (TR 58). On July 22, 2005, Forest Service Officer Breck Young visited the site and found it had an older camper/trailer with a snow roof built on it (TR 86-87; Ex. 6). The camper had a pipe which extended into the ground, apparently used for water disposal (TR 87-88; Ex. 11). Officer Young also observed human feces, children's toys, and litter throughout the campsite area (TR 88-89; Ex. 6). Officer Young returned to the campsite seven days later and again observed the camper/trailer with the snow roof. He noted that the camp had been heavily used

**Memorandum Decision and Order - 3**

since his previous visit (TR 89-90). Officer Young visited the area several more times and observed the camper/trailer with the snow shed in the same place he had seen it previously (TR 94; Ex. 6). He also saw that Knapp had a smaller, locked camper full of equipment at the high bank site near his digging operations that was some distance from his camp site (TR 94-95; Ex. 8, 9).

Hicks likewise visited the campsite on several more occasions. On August 2, 2005, and again on October 12, 2006, he observed the camper/trailer with the snow shed once again (TR 33-35; Ex. 6). He noted that the camper/trailer appeared as if it was being used as a residence rather than for equipment storage (TR 34, 35).

On March 21, 2007, the Decision Memo for the KGH Plan of Operation (Ex. 4) was signed by Idaho City District Ranger Douglas Gochnour (TR 39-40). The Decision Memo specified that "[t]here will be no permanent structures erected on Forest Service land. Temporary structures will be limited to small scale storage shelters for supplies and equipment" (Ex. 4).

On May 18, 2007, Hicks visited the campsite and photographed the camper/trailer (TR 35-37; Ex. 6 and 7). There were also refrigerators, fuel tanks, chairs, bicycles and firewood on the site (TR 44; Ex. 6, 7). Officer Young visited the campsite again on May 20, 2007 and observed that the camper/trailer was still present. (TR 96; Ex. 13). He also saw a permanent fire ring which had been built

**Memorandum Decision and Order - 4**

on the campsite (TR 97; Ex. 10). He also saw the refrigerators and fuel storage tanks next to the camper/trailer (TR 98; Ex. 12).

Officer Young returned to the campsite on June 13, 2007 as part of his investigation of the Noble Gulch Fire.  (TR 101-02). Officer Young determined that the fire had originated in the permanent fire pit on Knapp's campsite (TR 103-04; Ex. 17, 18). Officer Young saw that the camper/trailer appeared to be lived in as a residence at that time (TR 104; Ex. 17, 18).  He looked inside and saw that the camper/trailer was clean – apparently not being used for equipment storage (TR 104-05).

On June 15, 2007, District Ranger Gochnour sent Knapp a letter stating that he would approve Knapp's Plan of Operations if Knapp would undertake certain mitigation measures (TR 41-42; Ex. 5). However, the letter indicated that the District Ranger "will not approve use of the camp trailer" (TR 43; Ex. 5).  The list of mitigation and operational constraints to the plan of operations attached to the letter included removal of the camper/trailer, snow shed, refrigerators, tanks, and all other equipment unnecessary to mining; maintaining the camp in a neat and orderly fashion and disposing of human waste at an approved facility; having any campfires in a pit and/or fire circle; stabilizing the high bank where Knapp had been mining; not processing material from the creek bank, and posting an $800

**Memorandum Decision and Order - 5**

reclamation bond to insure final stabilization of the high bank and site clean up (Ex. 5).

On July 11, 2007, Knapp told Hicks that he would not comply with the June 15th letter ( TR 48). Knapp never signed the final plan of operations (TR 46-47).

On August 7, 2007, Officer Young visited the campsite and observed the camper/trailer still in place (TR 106-08; Ex. 19). The campsite also contained two white barrels (TR 108-09; Ex. 20), a table and four chairs (TR 109-110; Ex. 20, 21), two five-gallon oil containers (TR 110; Ex. 21), two adult bicycles, three children's bicycles (TR 110; Ex. 22), and some trash lying around (TR 110-11; Ex. 23). It appeared that the camper/trailer had never been moved since the time Officer Young had first observed it (TR 111; Ex. 25). Officer Young testified that the camper/trailer, the fire ring, the table and chairs, and the stacks of firewood constituted an improvement on Knapp's mining claim (TR 112).

On February 29, 2008, District Ranger Gochnour visited the campsite and observed the camper/trailer. The camper/trailer was still in the same location (Photos, Ex. 24, 25). Gochnour also testified that the camper/trailer and the permanent fire ring constituted improvements on the claim (TR 144).

The Government filed its Information against Knapp on January 15, 2008, and a one-day bench trial was held on July 7, 2008 in front of Magistrate Judge

**Memorandum Decision and Order - 6**

Mikel H. Williams. Knapp was convicted, and he now appeals that conviction.

## ANALYSIS

Knapp contends that his conviction should be overturned based on the Eastern District of California's interpretation of 36 C.F.R. § 228.4 in *United States v. Lex*, 300 F. Supp. 2d 951 (E.D.Cal., 2003) and *United States v. McClure*, 364 F. Supp 2d 1183 (E.D.Cal., 2005). Knapp was convicted of unlawfully constructing, placing, and maintaining an improvement on national forest system lands without an approved operating plan, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(a). An improvement is defined as "an addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance. Also termed land improvement." Black's Law Dictionary, 7th Ed., St. Paul, Minn. (1999).

### I.  Standard of Review

The United States Magistrate Judge had original jurisdiction over this action, a Class B Misdemeanor, pursuant to 18 U.S.C. § 3401. Therefore, this Court has jurisdiction over the appeal pursuant to Federal Rules of Criminal Procedure 58(g)(2)(B) and (D) and Local Criminal Rule 58.2. "The scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge" FRCP 58(g)(2)(D); Local Criminal Rule 58.2 "Actual findings of the trial

**Memorandum Decision and Order - 7**

court which have been expressed in findings of fact and conclusions of law are subject to a clearly erroneous standard of review." *U.S. v. Doremus*, 658 F.Supp. 752, 754 (D.Idaho 1987) (citing *United States v. Bautista*, 509 F.2d 675 (9th Cir.1975). "Questions of law are subject to de novo review." *Id.* (citing *United States v. Nance*, 666 F.2d 353 (9th Cir.1982).

## II.  Knapp's Appeal

The Multiple Use Mining Act of 1955 authorizes the Forest Service to restrict mining operations on National Forest System lands. 30 U.S.C. §§ 622-625. "Where mining activity disturbs national forest lands, Forest Service regulation is proper." *Clouser v. Espy*, 42 F.3d 1522, 1529 (9th Cir. 1994) (citing *United States v. Weiss*, 642 F.2d 295, 298 (9th Cir. 1981)).

Citing *Lex*, *McClure*, and 36 C.F.R. § 228.4, and specifically referencing language in *Lex*, Knapp suggests that "so long as no earthmoving or tree-cutting is involved, a minor can camp on his claim indefinitely, despite the environmental impact that such activity may have." (Appellant Opening Brief, p. 1.)  In a footnote in its May 2003 decision in *Lex*, the District Court for the Eastern District of California did, in fact, state that "[a]s the regulations are currently structured, so long as no earthmoving or tree-cutting is involved, a miner can camp on his claim indefinitely, despite the environmental impact that such activity may have." *Lex,*

**Memorandum Decision and Order - 8**

300 F. Supp. at 962 n.10.  However, the Court went on to state that "[t]he solution to this problem, however, is to amend the regulations – a remedy well beyond the authority of the courts."  *Id.*

In June 2004, before agents ever approached Knapp, the Department of Agriculture essentially responded to the statement in *Lex* by issuing a clarification as to when a notice of intent and/or plan of operations is needed for locatable mineral operations on national forest system lands.  69 FR 41428-01, 2004 WL 1530411.  The Department issued an interim rule, effective August 9, 2004.  In the rule, the Department noted that since 1974, the Forest Service has applied the regulations at 36 C.F.R. § 228 in order to minimize adverse environmental impacts from mineral operations by requiring mineral operators to file proposed plans of operations for mineral operations which the District Ranger determines will likely cause significant surface disturbance to national forest system lands.  *Id.*  The Department specifically noted:

> The Forest Service and the courts have consistently
> required locatable mineral operators to obtain approval of
> a plan of operations whenever such operations would
> likely cause a significant surface disturbance whether or
> not those operations would always involve mechanized
> earth moving equipment or the cutting of trees. However,
> last year a District Court departed from this consistent
> interpretation and ruled that 36 CFR 228.4 (a)(2)(iii)
> allows a mining operation to occur on NFS lands without
> prior notification to the Forest Service or Forest Service

**Memorandum Decision and Order - 9**

> approval when the operation, irrespective of the impact of its surface disturbing activities, does not involve mechanized earthmoving equipment or the cutting of trees. This unprecedented ruling severely restricts the ability of the Forest Service to regulate miners engaged in surface disturbing operations which have serious environmental impacts although they do not involve mechanized earth moving equipment or the cutting of trees. Moreover, this new interpretation of 36 CFR 228.4 (a)(2)(iii), if left unclarified, will result in significant and unnecessary impacts to NFS lands and resources, including impacts to water quality, visual quality, natural features, species listed under the Endangered Species Act, and conflicts with other National Forest users.

Id.   The Department went on to make technical changes to the interim rule so as to prevent confusion regarding the proper interpretation of the regulations. "Specifically, the technical amendments clarify the long-standing requirement that a notice of intent and/or plan of operations is mandatory whenever the District Ranger determines that there may be significant surface disturbance to NFS lands and resources, whether or not the operation involves the cutting of trees or use of mechanized earth moving equipment."  Id.

The final rule amended the regulation to clarify 36 C.F.R. § 228.4(a) concerning requirements for mining operators to submit a notice of intent and obtain an approved plan of operations.  70 FR 32713-01, 2005 WL 1318731. Thus, effective July 6, 2005, the actual language of the relevant portion of the regulation states that "[a] notice of intent to operate is not required for . . .

**Memorandum Decision and Order - 10**

[o]perations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees, *unless those operations otherwise might cause a significant disturbance of surface resources. . . .*" 36 C.F.R. § 228.4(a)(1)(vi) (Italicized emphasis added.)

Moreover, the regulations goes on to state that "[a]n operator shall submit a proposed plan of operations to the District Ranger having jurisdiction over the area in which operations will be conducted in lieu of a notice of intent to operate if the proposed operations will likely cause a significant disturbance of surface resources." 36 C.F.R. § 228.4(3). The operator must submit the proposed plan of operations to the District Ranger having jurisdiction over the subject area "if those operations are causing a significant disturbance of surface resources but are not covered by a current approved plan of operations." Like the notice of intent, "[t]he requirement to submit a plan of operations also shall not apply to operations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees, *unless those operations otherwise will likely cause a significant disturbance of surface resources*." Id (Italicized emphasis added.)

Accordingly, this Court is not bound by footnote 10 of the *Lex* decision. Not only is the case without precedential value to this Court, but it is an apparent

**Memorandum Decision and Order - 11**

departure from the consistent interpretation of 36 C.F.R. § 228.4.  Moreover, the language in the regulation was amended before Knapp refused to abide by the suggested plan of operation or comply with its modifications and requirements in this case.

In this case, the evidence showed that Knapp constructed and maintained improvements which had a significant impact on the national forest lands.  The evidence further showed that Knapp never obtained an approved operating plan for his improvements, as required by 36 C.F.R. § 228.4.  Accordingly, Knapp's conviction for constructing, placing, or maintaining an improvement on National Forest System lands without a special-use authorization, contract, or approved operating plan must be affirmed. 36 C.F.R. § 261.10(a).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Charles A. Knapp's conviction for unlawfully constructing, placing, and maintaining an improvement on national forest system land, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(a), shall be, and the same is hereby, AFFIRMED.

**Memorandum Decision and Order - 12**



DATED: **February 20, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 13**